## MASON et al. v. TAYLOR, executor.

Under the pleadings and the evidence in the case the judge did not err in directing a verdict for the propounder.

No. 5079. APRIL 16, 1926.

Appeal; probate of will. Before Judge Hardeman. Washington superior court. August 14, 1925.

*Evans & Evans,* for plaintiffs in error. *E. W. Jordan,* contra.

HILL, J. On June 15, 1911, Mrs. Clara W. Cook executed her last will and testament, by the terms of which she left all of her property to her three grandchildren, Cecil H. Mason, Morton C. Mason, and Mrs. Agnes Mason Smith, except her household and kitchen furniture, which she bequeathed to her niece, Florrie Davis. By this will she appointed her niece, Florrie Davis, as executrix of the will. After executing this will, and before the death of testatrix, Florrie Davis, the named executrix, died. On July 10, 1923, Mrs. Cook executed a codicil to her will previously made, and in item 1 of the codicil she directed that there be set aside out of her estate $500 for the purpose of providing two stone slabs or grave markers, to be erected and placed over the grave of the late Miss Florrie Davis, and over the grave of testatrix, after her death. By item 2 of the codicil she bequeathed to her niece, Lola W. Taylor, all of her personal effects, and household and kitchen furniture in her home. In item 3 of the codicil testatrix bequeathed to her niece, Lola W. Taylor, and her husband, K. W. Taylor, the sum of $1500 in cash. In item 4 of the codicil she appointed K. W. Taylor as executor of the will and codicil. The will was signed by the testatrix in her own hand-

---

Wills, 40 Cyc. p. 1023, n. 29; p. 1165, n. 87; p. 1333, n. 62.

writing; the codicil was signed by her mark. Both will and codicil were executed in the usual form, and attested by three witnesses. K. W. Taylor, the named executor, offered the will and codicil for probate in solemn form in the court of ordinary; to which C. H. Mason, Morton C. Mason, and Mrs. Agnes Smith filed a caveat upon two grounds: (1) that at the time of the execution of the will the testatrix was wanting in testamentary capacity and was not of sound and disposing mind and memory; (2) that the will was not freely and voluntarily executed by the testatrix, but was the result of undue influence and persuasion over her by Mrs. Lola W. Taylor and K. W. Taylor, and the said codicil is not therefore her will, nor any part thereof; and that Mrs. Taylor, knowing that Mrs. Cook was incapable of making a will, had the codicil prepared and had the testatrix to sign the same, and procured the signature of the testatrix to the will through fraudulent practice and duress. The case was appealed from the court of ordinary to the superior court; and after hearing evidence in the superior court on the question of the probate of the will and codicil, the court directed a verdict for the propounder. A motion for new trial being overruled, the caveators excepted. In the amended motion for new trial movants contend that the court erred in directing a verdict for the propounder and in entering judgment setting up the will and codicil, because (1) there was an issue of fact in the case, which should have been submitted to the jury for their determination, the issue of fact being as to whether or not the testatrix, Mrs. Clara W. Cook, at the time of making the alleged codicil to the will, was of sound and disposing mind and memory and possessed sufficient mental capacity to make it; (2) there was an issue of fact as to whether or not the codicil to the will was freely and voluntarily executed by the testatrix, it being a question of fact for the jury to say whether under the evidence the will was secured by undue influence as alleged in the caveat.

The execution of the will and codicil were both proved by the witnesses who testified that at the time of the execution of each the testatrix was of sound and disposing mind and memory, and that the will and codicil were both freely and voluntarily made, and there was no undue influence, so far as they knew, brought to bear on the testatrix to make it. There is no contest as to the

execution of the will; the contest is over the execution of the codicil.

Cecil H. Mason, for the caveator, so far as material here, testified: "I do not recall whether Mrs. Cook ever referred to Mrs. Taylor's kindness to her, but she was kind to her though. Mrs. Cook never did make any complaint to me about the way she was treated by Mr. Taylor and his wife. I have heard her say that Mr. Taylor was kind to her, and I think he was very kind. So far as my observation extended, he was very kind to her, and Mr. and Mrs. Taylor gave her every attention so far as I know. Mrs. Cook was a woman of a great deal of intelligence naturally, up until a year or so before her death. She was a high-class woman all around, and mentally she was a woman of a great deal of intelligence up until two or three years before she died. Mentally she was deteriorating just like she was physically. As I said awhile ago, she could not remember as well as she could formerly. In other words, she could not remember just as well. She could not remember events as well, not in the last two or three years. She could not remember events, because in her life a visit of mine to see her was an event, but the last couple of years of her life she could not remember when I went to see her last. Nothing in her life was more eventful than a visit from me, and she could not remember those. As to what else there was that indicated that her mind was deteriorating, I would have conversations with her and I have been talking to her, and all of a sudden forget what she was talking about, and then she could not quote scripture like she used to. She could not quote practically any before she died. . . I would not say that Mrs. Cook was insane in July, 1923. She was not insane. I would not say that she was an imbecile in July, 1923; but I say she was not rational in July, 1923, or else she would not have signed that codicil. That is one reason why I say she was not rational, because she signed that codicil. That is not the only reason. I have just given them to you, and have told you about the conversations I have had with her, and about quoting the Bible and such as that. . . I do not recall now any legal papers ever being signed by Mrs. Cook's mark. At the time these powers of attorney were signed by Mrs. Cook, those were signed while she was of unsound mind. That is, her mind was not as good as the year before then. Her mind was deteriorating

at that time. As to whether I thought her capable of executing the powers of attorney, somebody had to attend to her business, and I thought it was my business to attend to it. I did not consider her mind such that I applied for letters of guardianship to the court of ordinary. I thought that power of attorney was a good paper and I would be protected when I acted under it. It did not occur to me at that time that there was something the matter with her mind. I realized then that she was not what she was mentally years before; if she had been strong mentally she would have looked after her own business. I know it is a fact that a woman sick and drawn up with rheumatism and suffering tortures as a consequence of rheumatism is incapable physically and mentally, from my experience, of looking after her business. If she had been healthy she might have been all right. If you are in pain, your mind is in bad condition; from my actual experience I know that to be true. You can not attend to business in severe pain." The above is substantially all the evidence bearing upon the question of mental capacity of the testatrix. There is substantially no evidence as to undue influence. The evidence discloses that the two legatees, Mr. and Mrs. Taylor, lived in the house with Mrs. Cook and waited on her and nursed her and were kind to her. There is also evidence that the attorney (Mr. Wood) who drew the codicil, under which Mr. and Mrs. Taylor were bequeathed the $1500, was approached by Mrs. Taylor with the request that he draw the codicil at the request of Mrs. Cook, and that the attorney did draw the codicil in compliance with that request but before it was signed by testatrix he read it over to her, and she stated that it was exactly as she wanted it, and the attorney gave it as his opinion that at the time she signed said codicil she was of sound and disposing mind and memory. There is some evidence in the record not bearing directly upon the questions at issue. We have set out those portions which tend even in the slightest degree to bear upon the subject of mental capacity or undue influence; and from a careful examination of the entire record we are of the opinion that there is no evidence of mental incapacity or undue influence; and therefore the judge did not err in directing a verdict for the propounder. Civil Code. (1910), § 5926. This case is similar in its facts to that of *Walters* v. *Walters,* 151 *Ga.* 527 (107 S. E. 492), where this court

held that the court did not err in directing a verdict for the propounder. *Judgment affirmed. All the Justices concur.*