No. 14827.   MAY 2, 1944.   REHEARING DENIED JUNE 9, 1944.

*Georgia C. Crenshaw, pro se.   Howard, Camp & Tiller,* contra.

MANLEY *v.* COMBS, by guardian.

No. 14823.   MAY 3, 1944.   REHEARING DENIED JUNE 9, 1944.

· *G. Seals Aiken* and *Anderson, Anderson & Walker,* for plaintiff.
: *Martin, Martin & Snow,* for defendant.

ATKINSON, Justice. (After stating the foregoing facts.) ■ Only the evidence to sustain the caveat is here set forth; but the record contains evidence produced by the propounder from many sources to rebut the foregoing, and to establish that the testatrix was mentally competent to have a decided and rational desire as to the disposition of her property. The evidence, however, was sufficient to sustain the caveat, which was based on lack of testamentary capacity. Where there is conflicting evidence as to testamentary capacity to make a will, and sufficient evidence to establish the absence of testamentary capacity, a verdict in favor of the caveat will not be set aside.

■ By the fourth ground of the motion for new trial error is alleged in the admission in evidence, for the purpose of impeachment, of a written document which contained certain data relative to the past history of the testatrix, and which was required for the

acceptance of a patient in the Georgia State Hospital at Milledgeville. George T. Manley, the propounder and principal legatee under the will, had testified to a long period of acquaintance, and a series of various transactions with the testatrix, and stated: "'I never at any time heard her say or do anything that indicated that her mind was not right, or that she didn't understand the things she was talking about, never in my life;" also: " As to what was the condition of her mind then, at the time she went over to Milledgeville, her mind had never been affected, so far as I know." When the document above referred to was presented to the witness, he admitted that it was in his handwriting and that he was one of the signers. This document gave the past history of the testatrix, in substance as follows: Name, age, nearest relative, extent of education? Does not have average intelligence; made success in business; kind disposition before insanity; never recovered from serious illness in 1933; lost mind then; not addicted to alcohol or drug habit; never insane before, present attack 1934; threatened to kill; kept pistol in possession, also knife; throws chair; goes without clothes; curses aloud; threatens to kill self; pistol taken from her; threatens to burn house; talks out of head; unable to know where she is; curses sisters all the time; hears noises and smells odors all the time; bedridden; under care of doctors in Macon and Atlanta; in bad fix both mental and physical; her mind is bad; and thinks some one is breaking in to kill her. Upon being questioned as to whether he signed this document, the witness admitted that he did, and sought to explain that it was done at the request of his mother and his aunt, who supplied the information therein, and that the paper did not contain any information representing his knowledge or opinion. He was questioned about most, but not all, of the statements contained therein, and denied that such statements were true. The document was admitted in evidence over the following objection of the propounder: "I don't think it is admissible for impeachment because he admits signing it; he simply explains why he signed it, and the circumstances; it does not contradict anything he said." This evidence was admissible for the purpose of impeaching the witness by showing contradictory statements. Code, § 38-1803.

In the brief of counsel for the plaintiff in error it is insisted that the document was inadmissible because the witness had ad-

mitted signing it, and had enumerated all the statements contained therein, and therefore the document itself should have been excluded. As stated above, the objection could not be construed as raising this question before the trial judge. Moreover, upon an examination of the document and of the witness's testimony in reference thereto, it will be found that there were some statements in the document which were not covered by his testimony.

■ Ground five alleges error upon another phase of the document containing certain past history of the testatrix, being the same document referred to in the second division of this opinion. In the early stages of the trial the court, over the objection of counsel for the movant, admitted this document as evidence to be considered in passing on the testamentary capacity of the testatrix. Subsequently, the judge ruled it out and instructed the jury not to consider it, though it was afterwards admitted solely for the purpose of impeachment. When the document was originally put in evidence, and before it was withdrawn therefrom by the court, Dr. J. I. Garrard was allowed to testify as to his opinion of the testatrix's mental condition, based upon his own observations, and the history furnished by the family as contained in this document. The movant contends that, even though the document was withdrawn from evidence, he was injured and prejudiced because the opinion testified to by Dr. Garrard had been partly based upon the history of the testatrix contained in the paper. We can not agree with this contention. After ruling out the document, the judge instructed the jury as follows: "Gentlemen of the jury, give me your attention for just a moment. Yesterday I admitted into evidence what was termed, in speaking of it, as a history that was used in connection with an inquisition of lunacy—the trial in the court of ordinary of Mrs. Combs. This history blank that I am speaking of is the one that the propounder, Mr. Manley, stated here on the stand that he signed. I am withdrawing that, gentlemen, from evidence and from your consideration. I am likewise withdrawing any statements made on direct or cross-examination by Dr. Garrard—you will remember the physician that came over here from the Georgia State Hospital at Milledgeville and was on the stand—where he made any reference to that history blank or quoted from it or read from it or made any statements about the contents of it. Gentlemen, now those pieces of evidence that were

introduced here and admitted at the time by the court, are now excluded and are not in evidence—you will not let them have any weight upon you whatsoever in arriving at a verdict in this case. You will consider them or this evidence as if it had not been introduced at all." These instructions were amply sufficient to withdraw from the jury any opinion that the witness had given which was based on the contents of this document. *Miller* v. *Everett,* 192 *Ga.* 26 (5) (14 S. E. 2d, 449).

■ Ground six alleges error in the refusal of the court, upon timely written request, to charge as follows: "All persons of lawful age, except idiots, lunatics and *those who are totally deprived of reason and understanding,* and except those who are acting under undue influence, are competent to make wills disposing of their property as they choose, be their understanding ever so weak. Courts and juries in passing on a will, do not undertake to measure the extent of the testator's mind, *for if he is not totally deprived of reason,* whether he be wise or unwise, he is the lawful disposer of his own property." The court charged all of the Code, § 113-202, defining testamentary capacity, and charged §§ 113-204 and 113-205, and in addition thereto charged as follows: "A person has testamentary capacity, gentlemen, who understands the nature of a will, namely, that it is a disposition of property to take effect after death, and who is capable of remembering generally the nature and value of the property subject to his disposition, and the persons related to him by ties of blood and affection, and who is capable also of conceiving and expressing an intelligent [intelligible?] scheme for the disposition of his property. If the testator has sufficient intellect to enable him to have a decided and rational desire as to the disposition of his property, this will be sufficient." This definition of testamentary capacity has been many times cited and approved. *Slaughter* v. *Heath,* 127 *Ga.* 747 (1-3) (57 S. E. 69, 27 L. R. A. (N. S.) 1); *McFarland* v. *Morrison,* 144 *Ga.* 63 (2) (86 S. E. 227); *Davis* v. *Frederick,* 155 *Ga.* 809 (2) (118 S. E. 206); *May* v. *May,* 175 *Ga.* 693 (2) (165 S. E. 617); *Griffin* v. *Barrett,* 183 *Ga.* 152, 164 (187 S. E. 828); *Morgan* v. *Bell,* 189 *Ga.* 432, 435 (5 S. E. 2d, 897).

The plaintiff in error relies on *Morris* v. *Stokes,* 21 *Ga.* 552, 571, to sustain his position; but that case has been explained, and the

exact question here raised decided adversely to his contentions in *Slaughter* v. *Heath,* supra.

■ There was no error in the action of the trial judge, as alleged in the seventh ground of the motion, where it appeared that during the cross-examination of the propounder, counsel requested the court to have the witness answer his questions without testifying as to extraneous matters, and the court stated: "I will have to restrict him in replying to [counsel's] questions, and ask him not to go into any other matters that are not explanatory of his answer."

■ The eighth ground is based upon an occurrence during the cross-examination of the propounder. Counsel had propounded a question, to which the witness made an extraneous reply, concluding with a statement to counsel: "Not only that, but you told me in Knoxville, Tennessee, he was not paying you for this, you were going to get yours out of the house and lot," to which counsel replied: "That statement is not true." The court interposed as follows: "You are a witness and you are bound to answer the questions, if you can; if you can not, just say so. I am not going to permit any argument between you and counsel. I shall want you to respect that now. Proceed." The statement of the court was proper. Moreover, no ruling of the court was invoked in reference to the statement made by counsel to the witness, and therefore no question is presented for decision by this court.

■ The ninth ground alleges error in a ruling upon evidence. In support of the caveat, Dr. W. A. Williams, on direct examination, testified: "As to the particular form of mental ailment, we made a diagnosis that it probably was a dementia præcox. As to what form of insanity dementia præcox is, it is . . where a person is threatening people, disoriented with themselves, and it persists where they are dangerous to themselves or other people, it is called that." Subsequently, on cross-examination, the witness testified: "I don't recall any . . statement from her . . that indicated she had made any threats to kill herself or anybody else . . and I don't recall what made me insert the words 'dementia præcox' in this little diagnostic card. . . It might have been entirely from information given me by some third person." Q. "You don't know . . that you based . . your diagnosis on your own observation or conversation with Mrs. Combs?" A. "No, sir." The motion states that following this

testimony on cross-examination, "Movant's counsel objected to said evidence upon the ground Dr. Williams admitted . . . that he could not say he got any information on his own observation on which said testimony could be based." The objection here made was not sufficient to reach the evidence previously given on direct examination, no objection to which is disclosed by the record. In order to question the legality of the evidence previously given on direct examination, counsel should have made a motion to rule out such testimony. The "objection" above quoted was not equivalent to a motion to rule out. *Brown* v. *Oatlis*, 55 *Ga.* 416 (2); *Kehoe* v. *Hanley*, 95 *Ga.* 321 (22 S. E. 539); *Fluker* v. *State*, 184 *Ga.* 809 (4) (193 S. E. 749).

■ The tenth ground alleges error in the admission of the testimony of S. Gus Jones, the attorney who prepared the will, who was present at its execution, and who testified as to certain conduct of the testatrix at the time of such execution. There had been an amendment to the caveat, admitting a prima facie case. Objections to his testimony were urged to the effect that having admitted a prima facie case—that the will was properly executed, and that the testatrix was at the time apparently of sound mind—while it was proper to show lack of mental capacity at other times, evidence of mental incapacity "at the time the will was executed" was improper, as it was contrary to the admission made in the caveat that the testatrix "was at the time . . apparently of sound mind." The admission of this testimony was not erroneous. The amendment to the caveat admitting a prima facie case, though not here quoted in full, was complete and contained all elements necessary for that purpose, which in turn placed the burden of proof upon the caveator. *Wood* v. *Davis*, 161 *Ga.* 690 (4) (131 S. E. 885); *Tilley* v. *King*, 190 *Ga.* 421 (3) (9 S. E. 2d, 670). With the burden of establishing lack of testamentary capacity, the caveator was not precluded from doing so by any competent evidence. Indeed, the very essence of such proof was the condition of her mind at the time of the execution of the will.

(a) Nor was the testimony of this witness incompetent under the Code, §§ 9-601, 38-418, or 38-1605. These sections have no application to the competency of an attorney as a witness with respect to essential facts attending the execution of a will. *O'Brien*

v. *Spalding,* 102 *Ga.* 490 (31 S. E; 100, 66 Am. St. R; 202);
*Walers* v. *Wells,* 155 *Ga.* 439 (5) (117 S. E. 322).

■ Ground eleven alleges error in the admission of testimony, over an objection that the evidence was irrelevant. The testimony was in no way injurious. Moreover, it was not such an objection to evidence as presents any question to this court. *Hogan* v. *Hogan,* 196 *Ga.* 822 (28 S. E. 2d, 74), and cit.

■ Under ground twelve, of the motion for new trial, it is contended that the court in effect expressed an opinion that the testatrix did not have testamentary capacity, by giving the following instruction: "Further, gentlemen, as I have told you a moment ago, ordinarily the burden in this case would be upon the propounder, but the law provides that, where objections are filed, the caveator may admit what in law is termed a prima facie case, that is, admit the execution of the will with all of the legal formalities and admit an apparent mental capacity to make the will. The caveatrix in this case did not admit entire mental capacity but only apparent mental capacity, and when that is done, as has been done in this case, then instead of the burden being upon the propounder of the will, as the law originally placed it to begin with, to establish the factum of the will, it then shifts to the caveatrix—in this case— and the burden then is upon her to show by the preponderance of the evidence, and establish the contentions of her objections as set forth in this caveat, which as I have just told you is the fact that the deceased did not have sufficient mental capacity to make and execute the paper that the propounder says is the last will and testament of the deceased."

It is insisted that the last phrase in the preceding paragraph was an expression of opinion that the testatrix did not have capacity to make a will. No such construction can be placed thereon. It was an explanation of the issues, and under no circumstances could have been construed by the jury as an expression of opinion by the court.         *Judgment affirmed. All the Justices concur.*